**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**BENJAMIN L. EAGLE**                                                      **PETITIONER**

**v.**                            **CASE NO.: 5:12CV00444 KGB/BD**

**DAVID EBERHARD, Director,**
**Arkansas Department of Community Correction**          **RESPONDENT**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge Kristine G. Baker.  Mr. Eagle - or any party - may file written

objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United

States District Court Clerk within fourteen (14) days of this Recommendation.  A copy

will be furnished to the opposing party.

If no objections are filed, Judge Baker can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

## II.   Introduction

On December 5, 2012, Petitioner Benjamin Eagle filed the pending 28 U.S.C.

§ 2254 petition for writ of habeas corpus.  (Docket entry #4)  Respondent Ray Eberhard

has filed a response.  (#18)  For the following reasons, Mr. Eagle's petition for writ of

habeas corpus should be dismissed, with prejudice.

## III.   Background

On February 25, 2011, Mr. Eagle was convicted in Pulaski County Circuit Court of

criminal attempt to commit theft of property and insurance fraud.[1]  (#4, at p. 128)  Mr.

Eagle received concurrent 10-year and 6-year sentences as a result.  (#4, at pp. 131-134)

He is currently on parole.

Mr. Eagle appealed his convictions to the Arkansas Court of Appeals, arguing a

violation of his right to a speedy trial.  (#18-2)  The Arkansas Court of Appeals agreed

with Mr. Eagle.  *Eagle v. State*, 2012 Ark. App. 187 vacated, 2012 Ark. 371.  The

Supreme Court of Arkansas, however, granted review and vacated the Court of Appeals's

opinion.  *Eagle v. State*, 2012 Ark. 371.

---

[1] The original sentence issued on this date was set aside, and the trial court re-
sentenced Mr. Eagle on May 5, 2011.  (#4, at p. 113 and 130; #4-1, at pp. 50-53)

2

Mr. Eagle filed a Rule 37 petition with the trial court on June 3, 2011.  The trial court denied the petition because Mr. Eagle's direct appeal was pending at the time, and the Arkansas rules prohibit simultaneously pursuing a direct appeal and post-conviction relief.  (#4, pp. 113-114)

Mr. Eagle filed a state habeas petition in Jefferson County Circuit Court on June 11, 2012.  (#18-9)  He asked to withdraw his petition when he was paroled.  (#18-11) The trial court granted Mr. Eagle's request and dismissed his petition on July 25, 2012, without addressing the merits.  (#18-12)  Mr. Eagle did not pursue any other collateral or post-conviction remedies in state court.

Mr. Eagle raises the following claims in the pending habeas petition: (1) violation of his right to a speedy trial; (2) violation of the prohibition of double jeopardy; and (3) violation of his right to due process and equal protection.  (#4, at pp. 4-5)  Respondent Hobbs contends that all of Mr. Eagle's claims are procedurally defaulted.  (#18)

## IV.   __Discussion__

### A.   *Procedural Default*

Before seeking federal habeas corpus review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional error.  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347 (2004); 28 U.S.C. § 2254(b) and (c).  Mr. Eagle's federal claims must rely on the same

factual and legal bases he raised in the state courts.  *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir.2006) (citations omitted).

Federal habeas relief is generally available to a petitioner only after he or she has fully exhausted the remedies available in the state courts.  28 U.S.C. § 2254 (b)(1)(A). This means that the petitioner must "use the State's established appellate review procedures."  *Armstrong v. Iowa*, 418 F.3d 924, 925 (8th Cir. 2005) citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999).

In this case, Mr. Eagle defaulted all of his claims for relief.  He did not exhaust his double jeopardy, due process, or equal protection claims because he did not raise them in the trial court or on direct appeal.  He also failed to appeal the denial of his state habeas petition or the dismissal of his Rule 37 petition.  See *Armstrong*, 418 F.3d at 926 (failure to appeal the denial of state post-conviction relief to the state's highest court deemed failure to exhaust).  Mr. Eagle pursued a speedy trial claim through the state courts, but presented only state factual and legal bases for the claim.  Mr. Eagle also failed to provide a federal basis for the speedy trial claim he presented in the pending petition.  (#4)

Claims raised in a federal habeas petition that were not exhausted through state court proceedings, and for which there is no remaining state court remedy, are considered defaulted.  A habeas petitioner's default can be excused only if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or

4

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991).

      B.    *Speedy Trial*

      Mr. Eagle did not raise a single federal issue related to speedy trial that would have alerted the Arkansas courts to the federal nature of his claims.  His appellate brief, reply, and supplemental reply cite Arkansas case law, Arkansas statute, and Arkansas criminal rules exclusively.  (#18-2, #18-4, and  #18-6)  Neither the Court of Appeals nor the Arkansas Supreme Court cited a single federal rule, statute, case, or constitutional provision when addressing Mr. Eagle's speedy trial claim.  *Eagle v. State*, 2012 Ark. App. 187 vacated, 2012 Ark. 371.  Because Mr. Eagle did not raise a federal issue in his state proceedings, he defaulted this claim.  *Baldwin v. Reese*, 541 U.S. at 32; 124 S.Ct. at 1351.

      Even if Mr. Eagle had not defaulted this claim, it would fail on the merits.  The Sixth Amendment guarantees the right to a speedy trial in all criminal prosecutions, whether state of federal.  U.S. CONST. amend. VI.  Unlike Arkansas's speedy trial rule, however, the constitutional right to a speedy trial in state prosecutions is not quantified by a certain number of days, weeks, or months.  *Baker v. Wingo*, 407 U.S. 514, 521-523, 92 S.Ct. 2182 (1972); *cf.,* ARK.R.CRIM.P. 28.1 (providing twelve-month period to bring defendant to trial before dismissal of charges).  Instead, under federal law, courts balance the conduct of both parties and consider other factors, including the length of delay, the reason for the delay, the defendant's assertion of his rights, and prejudice to the

defendant.  *Vermont v. Brillon*, 129 S.Ct. 1283, 1290 (2009) (citations omitted).  In this

case, the balancing test favors the State of Arkansas.

A total of 1105 days elapsed between Mr. Eagle's arrest on February 7, 2008, and

his trial on February 24, 2011 – a delay spanning three years.  The Supreme Court has

held that a three-year delay, in and of itself however, did not violate the defendant's right

to a speedy trial in *Brillon, supra.*  Still, the lengthy delay in getting Mr. Eagle to trial is

significant.  The reasons for the delay, however, do not establish a federal speedy trial

violation.

Mr. Eagle was scheduled to appear for trial on September 30, 2008, but requested

a continuance to October 14, 2008.  It appears that Mr. Eagle was experiencing health

issues during this time.  (#4-1, at pp. 5-8)  Mr. Eagle's newly appointed counsel requested

additional time to prepare, which pushed the October trial date to April 7, 2009.  During

this time, Mr. Eagle's counsel moved for a psychiatric evaluation.  (#4, at pp. 170-172)

Attempts at conducting a mental competency examination, and a delayed finding of

fitness to proceed, consumed the time from January 13, 2009, to September 22, 2010.

Records show that Mr. Eagle declined to cooperate with the forensic evaluation on

several occasions.  (#4, at p. 161; #4-1, at p. 88)  After the finding of fitness to proceed,

February 16, 2011 was the next available trial date acceptable to Mr. Eagle.  (#4-1, at p.

60)  The State moved for an earlier trial date, but that request was apparently denied

because Mr. Eagle's counsel had scheduling conflicts.  (#4, at pp. 155-156; #4-1, at p. 60)

Some of the delay in bringing Mr. Eagle to trial can be fairly attributed to the state. But it is clear from the record that Mr. Eagle's health problems, his dissatisfaction with his court appointed attorneys, and his failure to cooperate with the forensic evaluation were significant reasons for the delay in his trial.

Mr. Eagle relieved his first counsel for "irreconcilable differences" and an alleged refusal to investigate the validity of the charges. (#4, at p. 14) Mr. Eagle fired his next counsel for "ineffectiveness" and apparently for requesting a mental evaluation. (#4, at p. 14) Mr. Eagle's next counsel was either "relieved or left on his own," and counsel was "reluctant to stand up to Judge Wright," (#4, at p. 14) Mr. Eagle's final trial counsel allegedly "admitted close ties with [the] judge and stated he would help [the] judge before he would help [Mr. Eagle]." (#4, at p. 14) Mr. Eagle eventually represented himself at trial. His differences with four separate trial attorneys led to several delays that cannot be attributed to the state.

Mr. Eagle asserted his right to a speedy trial on October 22, 2010, by filing a motion to dismiss on speedy trial grounds. (#4, at pp. 159-160) But there is no evidence that he asserted his right to a speedy trial during the time he was refusing to cooperate with the forensic evaluation or when he was relieving his attorneys.

The final factor is prejudice to the defendant caused by the delay. There is no evidence that the delay in this case prejudiced Mr. Eagle in any way.

7

After balancing the conduct of both parties, this Court cannot find a Sixth Amendment speedy trial violation.  Mr. Eagle's conduct that led to several delays outweighs the state's lack of diligence, if indeed the state can be faulted.  Mr. Eagle has failed to demonstrate any prejudice flowing from the delay.

C.   *Double Jeopardy*

Mr. Eagle complains that the trial court erred by sentencing him twice for his conviction.[2]  He claims this constitutes a violation of the double jeopardy clause of the Fifth Amendment.  (#4, at p. 4)  It appears that Mr. Eagle raised this argument for the first time in this petition.  He certainly did not raise the issue with the Arkansas appellate courts.  Accordingly, Mr. Eagle's double jeopardy claim is procedurally defaulted unless he can establish cause and prejudice or actual innocence.

D.   *Due Process and Equal Protection*

Mr. Eagle claims a violation of his Fourteenth Amendment rights, alleging that the prosecutor filed a frivolous and invalid charge.  (#4, at p. 5)  Mr. Eagle never raised this claim with the trial court or the Arkansas appellate courts.  This claim is also procedurally defaulted unless Mr. Eagle can establish cause and prejudice or actual innocence.

---

[2] The trial court set aside Mr. Eagle's original sentence because a conviction used at sentencing had been reversed on appeal.  The trial court then empaneled a new jury for the purpose of setting Mr. Eagle's sentence.  (#4, at p. 113)

E.    *Exceptions to Procedural Default*

Mr. Eagle's procedural defaults will be excused if he can demonstrate:  (1) the cause-and-prejudice exception; or (2) the actual-innocence exception.  To establish "cause," a petitioner must "show some objective factor external to the defense" that impeded his ability to comply with state procedures.  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986).

1.    *Cause for Default*

The cause and prejudice standard applies to procedural defaults on appeal as well as at trial.  *Murray*, 477 U.S. at 491.  Mr. Eagle does not provide any basis for a finding of cause in his petition.  (#4)  Although unclear, he appears to blame "advice of counsel." (#4, at p. 5)  Ineffective assistance of trial or appellate counsel can be "cause" excusing a procedural default.  *Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002) (citing *Murray*, 477 U.S. 491–92).  But to rely on ineffective assistance as cause excusing a procedural default, Mr. Eagle must have properly raised the ineffectiveness claim in state court.  *Id*. (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–53, 120 S.Ct. 1587 (2000)).

Here Mr. Eagle might have attempted to raise an ineffective-assistance-of-counsel claim in his Rule 37 petition while his direct appeal was pending, but he never properly raised this claim.  He also failed to exhaust an ineffective-assistance claim through the state appellate courts.  As a result, he cannot rely on ineffective assistance as cause to excuse his procedural default.  Because Mr. Eagle has not established a basis for a finding

9

of cause for his default, there is no reason to address whether there was prejudice. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011).

##### 2. *Actual Innocence*

To establish actual innocence resulting in a miscarriage of justice, Mr. Eagle must show, based on new evidence, that a constitutional violation caused the conviction of someone who is actually innocent. *Pitts v. Norris*, 85 F.3d 348, 350 (8th Cir. 1996). This exception is concerned only with claims of actual innocence, as opposed to legal innocence. *Id.* A claim of actual innocence requires that a petitioner "support his allegation of constitutional error with new reliable evidence." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865 (1995)).

Actual innocence can be established by a credible declaration of guilt by another, a trustworthy eyewitness account, or exculpatory scientific evidence. *Id.* Mr. Eagle, however, has not come forward with any evidence of actual innocence to overcome his procedural default.

## V.      Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. A certificate of appealability may issue only if Mr. Eagle has made a substantial showing that he was denied a constitutional right. 28 U.S.C.

§ 2253 (c)(1)-(2).  In this case, Mr. Eagle has not provided a basis for the Court to issue a certificate of appealability.

**VI.** **Conclusion**

The Court recommends that Benjamin Eagle's petition for writ of habeas corpus (#4) be DISMISSED, with prejudice.  The claims Mr. Eagle raises in the petition are procedurally defaulted, and he has not demonstrate either cause and prejudice or actual innocence so as to excuse the default.  The Court further recommends that no certificate of appealability be issued.

DATED this 16th day of April, 2013.

_____
UNITED STATES MAGISTRATE JUDGE